UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MONA NORRIS,

                Plaintiff,

                v.

SECURITAS SECURITY SERVICES USA, INC., CSX CORP.,[1] CSX INTERMODAL TERMNIALS, INC., a wholly owned subsidiary of CSX CORP., JOHN DOES 1-111, AND XYZ CORPS., 1-100,

                Defendants.

Civil Action No. 10-06809 (SDW) (MCA)

**OPINION**

July 27, 2011

**WIGENTON**, District Judge.

Before the Court is Defendant, CSX Intermodal Terminals, Inc.'s ("CSXIT"), Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion"). This Court has jurisdiction under 28 U.S.C. § 1367. Venue is proper in this District pursuant to 28 U.S.C. § 1391. The Motion is decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons stated below, this Court grants Defendant's Motion.

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiff, Mona Norris ("Norris"), was employed as a security guard for Defendant Securitas Security Services ("Securitas") at the time the events leading up to this action occurred. (Second Am. Compl. ("SAC") ¶ 10.) Norris alleges that in April of 2010, a CSXIT employee named Billy committed acts of sexual harassment and racial discrimination against her. (Id. ¶¶

---

[1] On January 25, 2011, Defendant CSX Corp. was voluntarily dismissed without prejudice from this action pursuant to a stipulation. (Docket Entry No. 9.)

16, 17.) According to Plaintiff, Billy told her that "she 'needs a man with a good job'" and if she went out with him "she would not need Section 8 housing." (Id. ¶ 17(a)-(b).) Billy also allegedly told Plaintiff that "he likes women with big butts like Plaintiff's," and he also "[d]egrad[ed]" her "in public by stating that when he goes to the islands he has 'black women with big butts sit on his lap.'" (Id. ¶ 17(c), (h).) Norris also claims that Billy touched her "in a possessive and inappropriate way," asked her out "on a regular basis and" told her that "she treats him like 'stink meat.'" (Id. ¶ 17(d), (j).) Furthermore, Plaintiff maintains that Billy "urinat[ed] on the bathroom toilet seat" forcing her to clean off the urine, told her that "she is a 'good maid'" and made "references that 'black nannies are all over the place cleaning.'" (Id. ¶ 17(e), (f).) Additionally, Billy allegedly insinuated that Norris "is the first African American to be employed at her job for the longest out of the other African American employees" and threatened that "if she told on him she would be 'out of her job so fast it would make her head spin.'" (Id. ¶ 17(g), (i).)

Plaintiff alleges that she threatened to report Billy to his superior; however, Billy told her that no one would believe her because she "'was just a security guard.'" (Id. ¶ 20.) Norris also claims that she did not report the incident "to her supervisors because she was embarrassed, and afraid that she would lose her job." (Id. ¶ 21.)

Nonetheless, Plaintiff alleges that on April 26, 2010, "a clerk and Chris from U.S. Security's office[, a neighboring security guard company,] wrote a letter to Bruce Sheeley alleging that [] [Norris] was harassing U.S. Security's guards, and made other various negative allegations pertaining to [] [her] work performance." (Id. ¶¶ 18-23.) As a result of the letter, Plaintiff was terminated from her employment with Securitas. (Id. ¶ 25; Def.'s Br. 3.) Norris

maintains that Billy co-authored the letter in retaliation for her "refusal of [his] [] inappropriate sexual advances" and her threat to report him to his superiors. (Id. SAC ¶ 24.)

Subsequently, Norris initiated this suit alleging sexual harassment, wrongful termination, and hostile work environment under the New Jersey Law Against Discrimination, N.J. Stat. Ann. 10:5-1 et seq., ("LAD") (Counts I, II, III), intentional and negligent infliction of emotional distress (Counts IV, V), aiding and abetting in violation of LAD (Count VI), hostile and abusive work environment based on race in violation of 42 U.S.C. § 1981 (Count VII), hostile and abusive work environment based on race in violation of 42 U.S.C. § 2000e-2(a) (Count VIII),[2] and hostile and abusive work environment based on race in violation of LAD (Count IX).[3]

**STANDARD OF REVIEW**

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted); see also Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief.").

In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

---

[2] This Count is asserted against Securitas only.
[3] The Complaint does not appear to be asserting vicarious liability against CSXIT. Hence, the focus of the Court's analysis will be on direct liability.

may be entitled to relief.'"  Phillips, 515 F.3d at 231 (quoting Pinker v. Roche Holding Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555).  As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556–570) (internal citations omitted).  Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 129 S. Ct. at 1950.  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "'show[] that the pleader is entitled to relief'" as required by Rule 8(a)(2).  Id.

**DISCUSSION**

    **1. Sexual Harassment, Hostile Work Environment, and Wrongful Termination Claims under the LAD**

Defendant argues that Plaintiff has failed to state a claim for sexual harassment, hostile work environment, and wrongful termination under the LAD because there is no employer/employee relationship between CSXIT and Plaintiff.  (Def.'s Br. 8.)  This Court

4

agrees. "[T]he LAD was intended to prohibit discrimination in the context of an employer/employee relationship." Pukowsky v. Caruso, 312 N.J. Super. 171, 184 (App. Div. 1998). "Correspondingly, the lack of an employment relationship between the plaintiff and the defendant will preclude liability." Thomas v. Cnty. of Camden, 386 N.J. Super. 582, 594 (App. Div. 2006). Here, Plaintiff specifically alleges that she was an employee of Securitas. (SAC ¶ 10.) Plaintiff does not allege that she was an employee of CSXIT.

Additionally, Plaintiff has not alleged any facts that would suggest that she had an employment relationship with Defendant. In determining whether a plaintiff is an employee for purposes of LAD, the following factors are considered:

> (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation--supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer;" (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties.

Pukowsky, 312 N.J. Super. at 182-83 (quoting Franz v. Raymond Eisenhardt & Sons, Inc., 732 F. Supp. 521, 528 (D.N.J. 1990)). The SAC is devoid of any facts that would support any of the factors enumerated above and Plaintiff's assertion that "[i]t is irrelevant to make the distinction" that she is not an employee of CSXIT," (Pl.'s Br. 7), is not supported by the case law. As the court noted in Thomas, "the LAD's reach, broad as it is, does not extend to those whose only nexus, employment-wise, is to adversely affect an aggrieved person's employment with a third party." 386 N.J. Super. at 599. Because Norris has not alleged an employment nexus between her and CSXIT, Counts I, II, and III of her Complaint are dismissed.

5

### 2. Aiding and Abetting Claim under the LAD

"The LAD provides that it is unlawful for 'any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so.'" Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 126 (3d Cir. 1999) (quoting N.J. Stat. Ann. § 10:5-12(e)). To be liable as an aider or abettor, a plaintiff must show that "'(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.'" Tarr v. Ciasulli, 181 N.J. 70, 84 (2004) (alteration in original) (quoting Hurley, 174 F.3d at 127). "[T]o 'aid or abet' under the LAD, 'individual must willfully and knowingly associate himself or herself with the unlawful act, and seek to help make the act succeed. The defendant must share the same intent as the one who actually committed the offense.'" State, Dep't of Treasury, Div. of Inv. ex. rel. McCormac v. Qwest Communications Int'l, Inc., 387 N.J. Super. 469, 483 (App. Div. 2006) (quoting Shepherd v. Hunterdon Developmental Ctr., 336 N.J. Super. 395, 424 (App. Div. 2001)).

Here, Plaintiff has not sufficiently pled that CSXIT aided and abetted Billy. Plaintiff simply alleges that "Defendants were aware of their roles in contributing to the tortious activity that was committed" and "Defendants knowingly and substantially assisted each other in the principal violations." (SAC ¶¶ 49, 50.) However, Norris specifically alleges that she did not report Billy's conduct to her supervisors. (Id. ¶ 21.) Additionally, although she maintains that she threatened to report Billy to his superiors, she does not allege that she actually did. (See id. ¶ 19.) Defendant cannot "willfully and knowingly associate" itself with Billy's alleged conduct if it has no knowledge of said conduct. State, Dep't of Treasury, Div. of Inv. ex. rel. McCormac,

6

387 N.J. Super. at 483. To the extent that Plaintiff is arguing that CSXIT aided and abetted Securitas, that claim also lacks merit because she has not alleged that CSXIT was in any way involved in her termination. Norris was an employee of Securitas and she was terminated by Securitas. Consequently, Plaintiff has failed to state a direct claim against CSXIT for aiding and abetting under the LAD.[4]

### 3. Hostile and Abusive Work Environment under Section 1981

Section 1981(a) provides in pertinent part that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

To establish a claim under §1981 for hostile work environment, a plaintiff must show "(1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability." Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996). In determining whether the work environment is hostile or abusive, the court must look at the "totality of the circumstances." Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990). The court may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

---

[4] In light of this conclusion, the Court will not address Defendant's argument that a corporation cannot be held liable for aiding and abetting under LAD. (Def.'s Br. 10-12.)

7

performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). No single factor is dispositive. Id.

The Court finds that Norris has not sufficiently pled a claim against Defendant for hostile work environment under §1981. There are only two statements in the Complaint that pertain to Norris's race. Plaintiff alleges that Billy made "references that 'black nannies are all over the place cleaning'" and he also "insinuat[ed] that Plaintiff is the first African American to be employed at her job for the longest out of the other African American employees." (SAC ¶ 17(f), (g).) Norris does not indicate the number of occasions Billy made these statements. Nonetheless, these two statements are not sufficient to constitute pervasive or regular discrimination. At most, those statements are "mere offensive utterances." Harris, 510 U.S. at 23.

Plaintiff argues that "[i]f the racial slurs made by 'Billy' are true, the Plaintiff's contractual rights in the workplace could be affected." (Pl.'s Br. 17.) However, there is no allegation in the Complaint that Norris has a contract with CSXIT. Plaintiff does not even allege that she has a relationship with CSXIT. Consequently, Plaintiff has no basis to assert a claim against CSXIT under §1981.

4. **Negligent or Intentional Infliction of Emotional Distress**
   a. **Negligent Infliction of Emotional Distress**

In New Jersey, a plaintiff may maintain an action for negligent infliction of emotional distress under two scenarios. First, "[a] plaintiff can demonstrate that the defendant's negligent conduct placed the plaintiff in reasonable fear of immediate personal injury, which gave rise to emotional distress that resulted in a substantial bodily injury or sickness." Jablonowska v. Suther, 195 N.J. 91, 104 (2008). On the other hand, a plaintiff can maintain an action for

negligent infliction of emotional distress by satisfying the four elements set forth in Portee v. Jafee, 84 N.J. 88, 101 (1980). These elements are: "(1) the defendant's negligence caused the death of, or serious physical injury, to another; (2) the plaintiff shared a marital or intimate, familial relationship with the injured person; (3) the plaintiff had a sensory and contemporaneous observation of the death or injury at the scene of the accident; and (4) the plaintiff suffered severe emotional distress." Jablonowska, 195 N.J. at 103 (citing Portee, 84 N.J. at 97, 101).

Plaintiff has not alleged any facts suggesting that CSXIT was negligent. Plaintiff admits that she did not report Billy's conduct to Defendant or to Billy's supervisors. (SAC ¶¶ 19-21.) Additionally, Norris has not pled any facts showing that she was placed "in reasonable fear of immediate personal injury." Jablonowska, 195 N.J. at 104. Furthermore, Plaintiff has not alleged any facts that would satisfy the elements set forth in Portee. Consequently, Plaintiff has failed to state a claim for negligent infliction of emotional distress against CSIX and that count is dismissed.

### b. Intentional Infliction of Emotional Distress

Generally, to establish a claim for intentional infliction of emotional distress, the plaintiff must show "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (citation and internal quotation marks omitted). "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Taylor v. Metzger, 152 N.J. 490, 509 (1998) (quoting 49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc., 227 N.J. Super. 449, 472 (App. Div. 1988)) (internal quotation marks omitted).

9

Plaintiff has not pled sufficient facts to support a claim for intentional infliction of emotional distress against CSXIT. Norris has not even alleged that Defendant had any knowledge of Billy's conduct. Furthermore, CSXIT had no involvement in Plaintiff's termination. There are simply no facts in the Complaint that would support a claim of intentional infliction of emotional distress against Defendant. Furthermore, "[i]n New Jersey, it is 'extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.'" Sanchez v. SunGard Availability Services LP, 362 Fed. Appx. 283, 288 (3d Cir. 2010) (quoting Griffin v. Tops Appliance City, Inc., 337 N.J. Super. 15, 23-24 (App. Div. 2001)); see also Witherspoon v. Rent-A-Car-Center, Inc., 173 F. Supp. 2d 239, 242 (D.N.J. 2001) ("it is particularly difficult to establish intentional infliction of emotional distress in the employment context."). Accordingly, Norris's claim is dismissed.

**CONCLUSION**

For the above stated reasons, CSXIT's Motion is GRANTED.

s/ Susan D. Wigenton<br>**Susan D. Wigenton, U.S.D.J.**

cc: Madeline Cox Arleo, U.S.M.J.